Filed 3/14/25  P. v. Smith CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062972 |
| v. | (Super. Ct. No. 06ZF0138) |
| BERNARD SMITH, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Gary S. Paer, Judge. Affirmed.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Arlene A. Sevidal, Andrew Mestman and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Bernard Smith was convicted of one count of first degree murder (Pen. Code, § 187, subd. (a))[1], one count of second degree robbery (§§ 211, 212.5, subd. (c)), one count of possession of a firearm by a felon (former § 12021, subd. (a)(1)), and one count of sale or transportation of a controlled substance (Health & Saf. Code, § 11352, subd. (a)).[2] The jury also found true the allegation that defendant committed the murder during a robbery (§ 190.2, subd. (a)(17)(A)). The court sentenced defendant to life in state prison without the possibility of parole plus three years.

In April 2019, defendant filed a petition for resentencing under former section 1170.95 (now § 1172.6).[3] The court found defendant's petition set forth a prima facie case for relief and issued an order to show cause. After an evidentiary hearing, the court denied the petition, and defendant appealed.

Defendant argues the court erred by denying his petition because there was no substantial evidence he was a major participant in the robbery acting with reckless indifference to human life or aided and abetted the murder. For the reasons below, substantial evidence supported the court's

---

[1] All further statutory references are to the Penal Code.

[2] Defendant was tried twice on the murder and robbery charges. Another panel of this court reversed the original convictions due to prejudicial *Aranda-Bruton* error. (*People v. Smith* (June 28, 2011, G041645) [nonpub. opn.]; see *Bruton v. U.S.* (1968) 391 U.S. 123; *People v. Aranda* (1965) 63 Cal.2d 518, superseded in part by constitutional amendment as stated in *People v. Fletcher* (1996) 13 Cal.4th 451, 465.)

[3] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10).

finding that defendant was a major participant in the robbery and acted with reckless indifference to human life. We accordingly affirm the order.

FACTS

I.

THE UNDERLYING INCIDENT[4]

In February 2006, defendant, Stephen Bennett, Brandon Turner, and Turner's younger brother, Deshawn Turner, were at Reuben Avery's home in Oceanside. They talked about having no money. At one point, defendant said he wanted to get drugs and asked Bennett where they could get some. Bennett called a drug dealer in Irvine and ordered cocaine. They planned to rob the drug dealer. Avery refused to participate, but defendant, Bennett, and the Turner brothers left Avery's house.

Later that evening, the drug dealer was shot and killed outside of his apartment in Irvine. One witness heard two shots and then observed two "dark skinned" men running. One man was chasing the other and was shooting a gun. The man who was being chased yelled for security and fell to the ground. The witness told his wife to call the police and then observed the shooter walking away with another man who the witness described as shorter and thinner than the shooter.

According to another witness, two slender men were running with one in the front and the second close behind. The witness also observed a third man who appeared to be catching his breath after running. The third man "grabbed and hitched up his pants and said 'Get him, Get him, Get him.'" The witness described the third man's tone as "very insistent." The

---

[4] We summarize the facts from defendant's second jury trial.

3

witness also described the third man as "heavy-set" and "chubbier" than the other two men.

A third witness heard a male voice ask, "Did you pick him, did you pick that fool?" Another male voice answered, "The mother fucker is down." The witness observed two people walking away. She described one of them as taller and wearing a puffy jacket while the other person was shorter and "stockier."

Later, Bennett spoke to Avery on the phone and told him they got the drugs. Bennett also told Avery they had run out of gas. After their phone call, three other individuals took gas to Bennett's vehicle where it was stopped on the side of the freeway.

Sometime after midnight, Avery saw defendant, Bennett, and the Turner brothers at someone else's home. Defendant asked Avery for his pipe, and they both smoked crack cocaine. Avery later saw Brandon Turner had crack cocaine, a .22 caliber handgun, and bullets.

At the scene of the shooting, police found .22 caliber shell casings. The drug dealer suffered gunshot wounds from a small caliber bullet and also had "birdshot" or small pellets in the back of his calf. Police obtained video footage from a nearby security camera, which depicted a vehicle driven by Bennett.

Police later questioned defendant and Bennett. After their interviews, the police put them in the back of a patrol car together and recorded their conversation, which was admitted into evidence. Defendant and Bennett talked about what they had told the police and who might be giving information to the police. At one point, defendant said, "[T]he only thing they got is us in that parking lot." Defendant added, "I said yeah I got out of the car to piss." Bennett responded, "Oh but they didn't see you."

4

Defendant then said, "Na, na listen they see me run they see me running." Defendant also said, "[F]irst of all he showed me a picture I don't know I'm telling you what's happening, I was high, I'm the only witness I told you I was pissing and I heard somebody say 'hey cuz, don't run,' they got the shooting, I doved over in the bushes, and I've seen, see RED [Bennett] coming across I took off running say hey man they already shooting."

A few days later, police arrested Brandon Turner who confessed to shooting the drug dealer and taking his drugs. In 2008, a jury convicted Brandon Turner of first degree murder and robbery and further found true allegations that he committed the murder in the course of a robbery and personally and intentionally discharged a firearm resulting in death. In 2012, a jury convicted defendant of first degree murder, among other things.

II.

DEFENDANT'S PETITION FOR RESENTENCING

In his petition for resentencing, defendant averred, among other things: "1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] 2a. At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine . . . . [¶] 3. I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."

The court found defendant's petition set forth a prima facie case for relief and issued an order to show cause. At the hearing, the court noted it had presided over defendant's second jury trial and agreed to consider the trial transcript, information, jury instructions, and verdict forms from the second trial. As to the trial transcript, the trial court emphasized it would not

5

consider a statement made by Bennett to Avery because another panel of this court previously held the statement was inadmissible hearsay.

After hearing from the parties, the court denied the petition and found the prosecution had proven beyond a reasonable doubt that defendant would be guilty of murder under current law. According to the court, defendant was a major participant who acted with reckless indifference to human life. The court relied on the following facts. First, defendant was actively and substantially involved in the events leading up to the murder. He and his cohorts were in Oceanside and wanted to get drugs but had no money. After Bennett proposed to "go jack . . . up" a drug dealer in Irvine, defendant and his cohorts drove to Orange County to rob the drug dealer.

Second, despite defendant's argument to the contrary, the court found defendant was one of the two men who pursued the victim. According to the court, "there [was] no doubt" defendant got out of the vehicle in Irvine. Based on videos it reviewed of the incident, the court concluded a person matching defendant's description exited the vehicle and left the area with Brandon Turner. The court believed defendant stood "out like a sore thumb" because he was short with a "stocky husky build." The court added that witnesses described one of the males as having a husky or stocky build. The court further noted the jury found defendant was guilty of possessing a gun as a convicted felon and the victim had "birdshot" or "snake shot" in his calf.[5]

---

[5] The jury from defendant's first trial convicted him of one count of possession of a firearm by a felon (former § 12021, subd. (a)(1)). The jury from defendant's second trial found the allegation that he personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)) to be not true.

6

The court concluded: "[C]ircumstantially it could be argued that if [defendant is] the second guy chasing, he fired a round too."

Third, the court noted the second person pursuing the victim and who the court believed was defendant yelled: "'get him, get him, get him.'" The same person later jumped into the bushes and said: "'[T]hey see me jumping in the bushes. They see me running.'" Finally, the court stressed defendant never rendered aid, tried to stop the killing, or expressed any remorse or concern. To the contrary, the court believed defendant was involved in the plan to use force to rob the drug dealer. The court also concluded defendant was in a position to facilitate or prevent the murder and played a role in the murder because he chased the victim.

For the same reasons above, the court held the evidence also showed defendant aided and abetted the murder. Defendant timely filed a notice of appeal.

DISCUSSION

Defendant argues the court erred by denying his petition because there was insufficient evidence, proving beyond a reasonable doubt, that he was one of the two men who chased the victim. Instead, he suggests Deshawn Turner could have been the second pursuer. We disagree. Substantial evidence supports the court's finding that defendant was a major participant in the robbery and acted with reckless indifference to human life.

I.

APPLICABLE LAW AND STANDARD OF REVIEW

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the

intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) Relief under section 1172.6 is accordingly restricted to those convicted of murder "under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ." (§ 1172.6, subd. (a)(1).)

The burden of proof is on the prosecution to prove beyond a reasonable doubt the defendant is ineligible for resentencing. (§ 1172.6, subd. (d)(3).) To determine if a trial court properly denied a section 1172.6 petition after an evidentiary hearing, we review the factual findings for substantial evidence. (*People v. Arnold* (2023) 93 Cal.App.5th 376, 383.) "We view the facts in the light most favorable to the People. In this process, we presume in support of the judgment the existence of every fact that can be reasonably deduced from the evidence, whether direct or circumstantial. [Citations.] We must accept factual inferences in favor of the trial court's ruling." (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 591.)

## II.

### SUFFICIENCY OF THE EVIDENCE

A major participant in a robbery is someone whose "personal involvement [is] substantial, greater than the actions of an ordinary aider and abettor." (*People v. Banks* (2015) 61 Cal.4th 788, 802.) Factors bearing on the major participation requirement include the defendant's (1) role in planning the crime that led to one or more deaths; (2) role in supplying or using lethal weapons; (3) awareness of the particular dangers created by the nature of the crime, the weapons used, or the other participants; (4) presence at the scene, including whether he could have facilitated or prevented the

murder, and whether his actions played a role in the murder; and (5) actions after lethal force was used. (*Id.* at p. 803.) "No one of these considerations is necessary, nor is any of them necessarily sufficient. All may be weighed in determining . . . whether the defendant's participation . . . was sufficiently significant to be considered 'major.'" (*Ibid.*)

Whether a defendant acted with reckless indifference to human life depends on whether the defendant was "'aware of and willingly involved in the violent manner in which the particular offense is committed' [and] consciously disregard[ed] 'the significant risk of death'" created by his actions. (*In re Scoggins* (2020) 9 Cal.5th 667, 677.) "'"The risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."'" (*Ibid.*) The factors for determining whether a defendant acted with reckless indifference to human life overlap with the major participant factors and include: (1) defendant's knowledge that weapons would be used; (2) how the weapons were used and the number of weapons; (3) defendant's proximity to the crime; (4) defendant's opportunity to stop the killing or aid the victim; (5) duration of the crime; (6) defendant's knowledge of the killer's propensity to kill; and (7) defendant's efforts to minimize the possibility of violence during the crime. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1023–1024.)

Here, substantial evidence and the totality of the circumstances supported the court's findings that defendant was a major participant in the robbery and acted with reckless indifference to human life. This was not a spur of the moment robbery. Earlier in the evening, defendant told his cohorts he wanted to get drugs even though they did not have any money and

9

asked Bennett where they could get some. This prompted Bennett to order cocaine from the drug dealer in Irvine. Defendant, Bennett, and the Turner brothers then drove from Oceanside to Irvine. After the murder, Avery made several statements to law enforcement indicating there was a plan to rob the drug dealer. Law enforcement asked Avery if there was a plan to buy something, and Avery disclosed the plan was "to just take it." Avery also said, "[T]here was two zips getting set up to be taken" and "I'm talking to RHONDA, talking about, yeah, this dumb ass, you know, uh, going down there to, uh, to rob PC."

There also was evidence defendant chased the victim along with Brandon Turner. Two witnesses described a man who matched defendant's physique. The witnesses said the man was shorter, stockier, "heavy-set," and "chubbier." Defendant was approximately 5'6" tall and 180 pounds. By contrast, Bennett was approximately 5'10" tall and 190 pounds while Deshawn Turner was approximately 5'9" and 150 pounds. The trial court also indicated a video showed one of the men who chased the victim jump into the bushes. In the patrol car, defendant told Bennett, "I told them I jump a [sic] the bushes" and "they see me run they see me running." There was further evidence defendant yelled "get him" to Brandon Turner as they were chasing the victim. Defendant does not dispute armed robbery of a drug dealer is particularly dangerous. Finally, defendant did not try to stop the killing or render any aid to the victim. Instead, he and his cohorts left with the cocaine and went back to Oceanside.

To argue there was insufficient evidence he was one of the men who chased the victim, defendant relies on statements made by another panel of this court in resolving defendant's first appeal. (*People v. Smith* (June 28, 2011, G041645) [nonpub. opn.].) In that case, another panel of this court

10

noted the jury viewed a taped interview of Bennett where he clearly stated Deshawn Turner never left the vehicle. (*Ibid.*) By process of elimination, it was obvious defendant was the second pursuer. (*Ibid.*) But the court "[r]eluctantly" reversed the murder and robbery convictions because admission of the taped statement by a nontestifying codefendant violated defendant's constitutional right to confront witnesses against him. (*Ibid.*)

In finding the error was not harmless, the court said: "[T]here is no evidence in the record which establishes that the younger brother DeShawn was in the car at the time the drug dealer was shot *except* for Bennett's statement to the Irvine police sergeant. Nor, as we explain below, was the evidence of the eyewitness neighbors who saw the chase and the shooting sufficient to identify [defendant], as distinct from DeShawn, as the second male chasing the drug dealer. The physical differences between [defendant] and DeShawn in height and weight were just too close, particularly under the reasonable doubt standard required by *Chapman v. California* (1967) 386 U.S. 18 . . . ." (*Ibid.*) The court further said: "*Approximately* three inches and thirty pounds is just not enough to send a man to prison for the rest of his life when none of the eyewitnesses could give a positive identification, particularly given the late night hour. As for the identification of 'men,' as distinct from 'one man and one juvenile,' that evidence again hardly establishes [defendant's] guilt beyond a reasonable doubt. A young man of 16, like DeShawn, who is approximately five feet nine, can easily look like a man in the dark." (*Ibid.*) The court also found defendant's statements to Bennett in the patrol car showed some guilt but were only about what they *told* the police. (*Ibid.*)

The appellate decision above does not require reversal of the trial court's finding that defendant was the second pursuer. The appellate decision

11

concerned the first trial and first trial evidence. Here, the trial court presided over the second trial and considered evidence from the second trial. The trial court reviewed videos of the incident and said "[t]here [was] no doubt" defendant was the other person who exited the vehicle with Brandon Turner. On appeal, "'[c]onflicts [in the evidence] . . . subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the . . . truth or falsity of the facts upon which a determination depends.'"" (*People v. Williams* (2020) 57 Cal.App.5th 652, 663.) "Although we must ensure the evidence is reasonable, credible, and of solid value" (*People v. Jones* (1990) 51 Cal.3d 294, 314), reversal is not warranted unless ""upon no hypothesis whatever is there sufficient substantial evidence to support [the trial court' ruling].'"" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.) Assessing the record from that deferential perspective, we are convinced there was substantial evidence defendant was a major participant in the robbery and acted with reckless indifference to human life. We therefore need not address the alternative aiding and abetting theory.

## DISPOSITION

The postjudgment order denying defendant's resentencing petition is affirmed.

SANCHEZ, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.